# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2531

_____

Sheila E. Peterson,

           Appellant,

      v.

Scott County; Scott County Sheriff's Department; William J. Nevin, Sheriff; Tom Helmrich, Jail Administrator,

           Appellees.

Appeal From the United States District Court for the District of Minnesota.

_____

Submitted: February 17, 2005
Filed: May 6, 2005

_____

Before BYE, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Sheila Peterson appeals the district court's grant of summary judgment in favor of her former employer, Scott County jail, and its administrators (collectively the County), on her claims of unlawful employment discrimination and retaliation. She contends that she established a genuine issue of material fact regarding whether her age and sex were motivating factors in the County's failure to hire her full time and failure to promote her to a full-time position, whether she was subject to a hostile environment, and whether the County unlawfully terminated her in retaliation for her

complaints. We reverse on the failure to hire, failure to promote, and retaliation claims and affirm the grant of summary judgment on the hostile work environment claim.

## BACKGROUND

We recount the evidence in the light most favorable to Peterson. In response to a posted notice, Peterson applied for a correctional position with the Scott County Sheriff's Department on May 15, 2001. She was 51, had nine years of experience as a corrections officer, and met the minimum qualifications of the position.[1] Peterson interviewed with Scott County on June 12, 2001. Three male applicants under 40, Kellace McDaniel, Marc Ravnholdt, and Gregg Krinke, also interviewed on the same day, and the County initiated background checks for all four applicants. The three male applicants were offered full-time jobs before their written background check summaries were completed.[2] Peterson was offered an intermittent position after her background check was completed on August 29, 2001.

Peterson applied twice for promotions to full-time positions with the Sheriff's Department. These positions were given to Justin Lane and Todd Langevin. Lane did not initially meet the minimum qualifications for a full-time permanent position; after the requirements were changed on September 21, 2001 to include military experience, Lane was re-rated and met the revised qualifications. He was offered a full-time position on September 28, 2001. Todd Langevin also lacked the minimum

---

[1]The minimum qualifications for the full-time corrections position were a high school equivalency, drivers license, and one year of experience as a corrections officer or two years of college in a corrections-related field.

[2]Ravnholdt was offered a full-time position on July 12; his background check was completed July 18th. McDaniel was offered a full-time position on July 18; his background check was completed on July 19th. Krinke was offered a full-time position on August 8th; his background check was completed September 11.

qualifications for a full-time position with the County but was placed in a temporary full-time position on July 3, 2001, less than a month after he was hired as an interim employee. In October 2001, Langevin and Peterson both applied for a newly opened, full-time, temporary position with Scott County. Peterson learned on November 9th that Langevin had been hired for the position.

When Peterson started working at Scott County, her supervisor, Sergeant Dumbleton, repeatedly called her an "old lady," and told her at one time to "put glasses on so [she] could hear." (Appellant's App. at 166-67.) He told her that she "didn't have the right parts" to take additional shifts, (Appellant's App. at 182); when she asked to be included in training on booking inmates, he refused, saying that it "was too hard to train old ladies." (Appellant's App. at 166.) These types of comments were made at least once a shift most of the days Peterson worked with Sergeant Dumbleton.

On one occasion Peterson's co-worker, Tom Bloedow, swore and screamed at her when she requested assistance releasing inmates. He told her that women were not needed at the jail because they were lazy. Peterson complained to the jail administrator, Tom Helmrich, about the age- and sex-related comments in October. On November 2nd and 5th, she complained to Sergeant Lenz regarding Bloedow and Dumbleton. In response, Lenz discussed proper language with Officer Bloedow, and reported the incident to Tom Helmrich. Lenz also sent an email to Helmrich recounting his problems with Peterson's performance. Sergeant Lenz reported that Peterson allowed an inmate to leave three hours early on work release, destroyed an inmate funds receipt, and that caseworkers had problems with her calling them inappropriately and trying to tell them how they should do their jobs.

Peterson learned on November 19th that other officers were mimicking her and making fun of her complaints. The following day Peterson called in sick because she felt that the situation was escalating. She left a voice mail with Pam Johnson, Scott

County employee relations, expressing her concerns about not being given a full-time position, Dumbleton's sex- and age-related comments, and the other officers making light of her complaints. Peterson also called Deputy Sheriff Mike Busch regarding these issues, adding that she was not receiving any training at the jail. Finally, Peterson called Tom Helmrich and discussed Langevin's promotion to the full-time temporary position, and Dumbleton's and Bloedow's comments. Helmrich responded that if she was unhappy, "maybe you should be somewhere else." (Appellant's App. at 142.) A notation on Helmrich's calendar for the day reads "Call Pam Johnson/ER . . . INTR-Dismissal." (Appellant's App. 15.) On December 4th, Peterson was terminated.

Peterson brought suit alleging discrimination based on age and gender, harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2, 2000e-3; the Age Discrimination in Employment Act, (ADEA), 29 U.S.C. § 623; 42 U.S.C. § 1983; and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.28, 363.33. The district court granted summary judgment to the defendants. This appeal follows.

## ANALYSIS

### I.    Standard of Review

We review the district court's grant of summary judgment de novo. Summary judgment is appropriate if the facts, viewed in the light most favorable to the non-moving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Summary judgment should seldom be granted in employment discrimination cases because intent is often the central issue and claims are often based on inference. Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir. 2004); Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999); see also

Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). Summary judgment should not be granted unless the evidence could not support any reasonable inference of discrimination. Lynn v. Deaconess Med. Ctr.- West Campus, 160 F.3d 484, 486-87 (8th Cir. 1998).

## II.    Age and Gender Discrimination

Peterson has not presented direct evidence of discrimination; we analyze her discrimination and retaliation claims using the familiar three-step, burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Applying this framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. at 802. The prima facie case raises a legal presumption of discrimination in the plaintiff's favor, requiring the defendant to articulate a legitimate, nondiscriminatory reason for its action. Id.; Tex. Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff then has the opportunity to demonstrate that the defendant's proffered reasons are in fact a mere pretext for discrimination. Burdine, 450 U.S. at 253; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 516-17 (1993) (clarifying that a plaintiff must show that the employer's proffer is a pretext for unlawful discrimination, not that it is merely false in some way). The evidence supporting the plaintiff's prima facie case may suffice to discredit the defendant's explanation, and the plaintiff is not required in all cases to introduce additional evidence to meet the burden of proof. Burdine, 450 U.S. at 255 n.10; Haglof v. Northwest Rehab., Inc., 910 F.2d 492, 494 (8th Cir. 1990). The ultimate burden of proving discrimination remains with the plaintiff at all times. Hicks, 509 U.S. at 518.

Peterson argues that we should apply a modified McDonnell-Douglas standard in light of Desert Palace Inc. v. Costa, 539 U.S. 90, 101-02 (2003), permitting her to survive summary judgment if she has raised a genuine issue of material fact that either the defendant's proffered reason for its action is a pretext for discrimination or

that unlawful discrimination was a "motivating factor" in the employer's decision. We have recently held that <u>Desert Palace</u> "is entirely consistent" with prior Eighth Circuit summary judgment decisions. <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004); <u>Strate v. Midwest Bankcentre, Inc.</u>, 398 F.3d 1011, 1017-18 (8th Cir. 2005). A plaintiff may meet the ultimate burden of proving intentional discrimination either through evidence "showing a specific link between the alleged discriminatory animus and the challenged decision" and allowing the fact finder to conclude that this animus actually motivated the challenged decision, <u>Griffith</u>, 387 F.3d at 736 (quoting <u>Thomas v. First Nat'l Bank of Wynne</u>, 111 F.3d 64, 66 (8th Cir. 1997)), or through indirect evidence subject to the <u>McDonnell-Douglas</u> analysis. A defendant is not entitled to summary judgment if the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's action even if the defendant has brought forward evidence of additional legitimate motives. <u>Griffith</u>, 387 F.3d at 735. Because <u>Desert Palace</u> does not alter this approach, we apply our traditional analysis to Peterson's claims.

### A.    Failure to Hire

Reviewing the record de novo, we conclude that Peterson has met her prima facie burden. She is within the protected class in both the ADEA and Title VII contexts, met the qualifications for the corrections officer position, and was hired for a temporary, rather than full-time position while three younger male applicants, who interviewed on the same day, were hired for full-time positions. Scott County in turn has presented a legitimate non-discriminatory basis for the hiring decision. Applicants were hired on a rolling basis as their background checks were completed; Peterson's background check was completed after those of the other applicants. Therefore, the question on summary judgment is whether Peterson has shown there is a genuine factual controversy regarding whether the County's hiring decision was motivated by Peterson's age or sex.

Peterson first argues that offers were made to three other applicants before their background checks were completed, in one case more than a month before the completion of the background check. The County claims that some offers were made based on a verbal confirmation that the background check was substantially complete and clear, because they did not want to lose qualified applicants through delays in the hiring process. While a jury may choose to accept this explanation, we draw inferences at this stage in favor of the non-moving party. The standard hiring process did not involve making offers before the formal background check had been completed. A reasonable jury could infer that verbal confirmations were not given, and offers were made without reference to background checks at all. A jury could also conclude that Scott County accelerated or modified the application process for some applicants and not others. Viewed in the light most favorable to Peterson, this evidence supports Peterson's contention that the completed background check was not in fact a prerequisite to an offer.

Scott County argues that Helmrich in fact hired Peterson, raising a presumption against discrimination. This court has previously observed that it is not likely that a supervisor would hire an older woman and then discriminate against her on the basis of her age and gender. Herr v. Airborne Freight Corp., 130 F.3d 359, 362-63 (8th Cir. 1997). We are not persuaded that this presumption can be applied with equal force when an applicant is hired, not for the position to which she applied, but for a less desirable interim position. Evidence of this type of hiring may show discriminatory intent rather than raising a presumption against discrimination.

Evidence of a changing hiring process and fluid standards for applicants, taken together with the defendant's evolving explanation of its hiring decision, would allow a reasonable jury to infer that the County's explanation is a pretext for unlawful discrimination. See Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1110 (8th Cir. 1994) (noting that a jury could reject the employer's proffered reason for termination because there was conflicting evidence on its believability). On summary

judgment the plaintiff need only present evidence sufficient to raise genuine doubt as to the legitimacy of the defendant's motives. O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995). Peterson's evidence meets this standard, and the district court erred in holding to the contrary.

### B.     Failure to Promote

Peterson claims that the County's failure to promote her to a full-time position was discriminatory. The County concedes that Peterson has established the first three elements of her prima facie case, but argues that she was not similarly situated to the successful candidates because the promoted officers had more experience working for the County, and were already full-time temporary employees. At the prima facie stage, the plaintiff's burden–showing she is similarly situated to other employees–is "not onerous." Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir. 2004) (quoting Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994)). The record shows that Peterson, Lane, and Langevin were recent hires, applying for full-time positions in the jail. All three were considered viable candidates for the position. See Ottman v. City of Independence, Mo., 341 F.3d 751, 757 (8th Cir. 2003) (finding candidates similarly situated where both met the minimum qualifications for the position). For the purposes of establishing a prima facie case, Peterson has shown that she was similarly situated to Lane and Langevin. Whether the applicants' experience and qualifications were in fact a legitimate basis for the County's decision is more relevant to the issue of pretext than the plaintiff's prima facie burden.

The County explained that Lane and Langevin were promoted because they had worked longer in Scott County, and this experience was viewed as more important than other corrections experience. Peterson has shown, however, that at least one full-time officer, Gregg Krinke, had no previous corrections experience at Scott County or any other facility when he was hired. While Lane and Langevin both had

slightly more Scott County experience than Peterson, they were promoted only a few months after being hired, and neither initially met the minimum qualifications for a permanent full-time position. Evidence that an employer promoted a less-qualified candidate can support a finding that the employer's non-discriminatory reasons for the promotion were pretextual. Duffy v. Wolle, 123 F.3d 1026, 1037-38 (8th Cir. 1997). While courts do not review the wisdom or fairness of employers' business judgments, other than to determine whether they involve intentional unlawful discrimination, we may consider whether an employer hired or promoted an individual who was substantially less qualified than an unsuccessful candidate in the protected class. Id. at 1038. Peterson's evidence that both Lane and Langevin did not meet the County's minimum qualification standards for a full-time position would permit a jury to determine that the stated reason for their promotion is not worthy of belief.

The County also claims that Peterson's poor performance and argumentative attitude provide a legitimate basis for preferring other candidates. In an email dated November 6th, Sergeant Lenz reported that Peterson allowed an inmate to leave three hours early on work release, destroyed an inmate funds receipt, and that caseworkers reported they found her difficult to work with. According to the County, the supervisors discussed these issues in a meeting, and determined that Langevin was the superior candidate for the temporary full-time position. The evidence, however, shows that Peterson's reported performance problems could not have influenced the promotion decision because they were not reported until after the team meeting; two of the incidents had not yet taken place. In addition, Peterson's supervisors deny stating that she was argumentative and deny discussing her qualifications with Helmrich at the meeting. The conflicting testimony of the supervisors who were present at this meeting raises a genuine issue of material fact regarding the impact of Peterson's performance and attitude on its hiring decision. Although this is an admittedly close case, we conclude that there is sufficient evidence in the record to cause a jury to doubt the defendants' reasons for not promoting Peterson.

## II.    Hostile Work Environment

To establish her hostile work environment claim, Peterson must show that:  1) she belongs to a protected group; 2) she was subjected to unwelcome harassment based on her age and sex; 3) the harassment affected a term, condition, or privilege of her employment; 4) her employer knew or should have known of the harassment; and 5) the employer failed to take proper action. Okruhlik v. Univ. of Ark., 395 F.3d 872, 881 (8th Cir. 2005).  Harassment must be both objectively and subjectively offensive.  We consider whether a reasonable person would find the environment hostile and abusive in light of all the circumstances, including whether the conduct "is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)).  Neither "simple teasing" and "offhand comments" nor "sporadic use of abusive language, gender-related jokes, and occasional teasing" amount to discriminatory changes in the terms and conditions of employment or actionable harassment.  Id. (citation omitted).

The record is not sufficient to support Peterson's claim. Her supervisor made regular references to "old ladies," once did not allow her to participate in a training session because it was "too hard to train old ladies," and once commented that she "didn't have the right parts" to fill in shifts.  A co-worker on one occasion commented that women were lazy and were not needed at the jail.  These appear to be the type of isolated incidents, teasing and offhand comments which, while offensive, do not reach the level of harassment. Gipson v. KAS Snacktime Co., 171 F.3d 574, 579-80 (8th Cir. 1999); Wallin v. Minn. Dep't of Corrections, 153 F.3d 681, 688 (8th Cir. 1998).  Accordingly, we affirm the district court's grant of summary judgment to the defendants on Peterson's hostile work environment claim.

## III. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that she engaged in statutorily protected activity, suffered an adverse employment action, and that there was a causal connection between the adverse employment action and the protected activity. Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998); Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270-71 (8th Cir. 1996). A defendant must present evidence of a legitimate, non-retaliatory reason for its action to rebut the plaintiff's prima facie case. The plaintiff must then show that the defendant's proffered reason was a pretext for retaliation. An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, Riceland, 151 F.3d at 819-20; Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997), but in general more than a temporal connection is required to present a genuine factual issue on retaliation, Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). The district court found that Peterson established a prima facie case of retaliation by showing that she engaged in protected conduct,[3] complaining about discrimination of her employer in a November 20 conversation with Helmrich, and that she suffered an adverse

---

[3] The district court concluded, citing Curd v. Hank's Disc. Fine Furniture, Inc., 272 F.3d 1039, 1041 (8th Cir. 2001), that Peterson was not engaged in protected activity when complaining about harassment because no reasonable person could have found that the comments she complained of created a hostile environment. We believe that this is an overbroad reading of Curd. The court's understanding of what constitutes sexual harassment under Title VII is evolving; plaintiffs who reasonably believe that conduct violates Title VII should be protected from retaliation, even if a court ultimately concludes that plaintiff was mistaken in her belief. See Crumpacker v. Kansas Dep't of Human Resources, 338 F.3d 1163, 1171 (10th Cir. 2003). Peterson complained of repeated offensive comments by her supervisor. Two specific incidents were connected to Peterson's requests for training. While we concluded that these events do not in fact create a hostile work environment, we are not convinced that Peterson's belief that they did was unreasonable.

employment action when she was terminated on December 4th. The timing of the termination, two weeks from the protected activity, is close enough to establish causation in a prima facie case. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002). Peterson also offered a note from Helmrich's calendar for November 20th, "Call Pam Johnson/ER . . . INTR-Dismissal." We do not share the County's view that only speculation connects Peterson to this note. Peterson was an interim employee, and was discharged shortly after this note and her conversation with Helmrich. There is no evidence that other interim employees were discharged either shortly before, or shortly after Peterson, and Helmrich himself has indicated that he is not sure who this notation refers to. Whether this was more likely a reference to Peterson, or some other employee is a determination better left to the finder of fact. Peterson testified that Helmrich responded to her complaints of discrimination by telling her "maybe you should be somewhere else." Helmrich also testified that his conversation with Peterson was heated, and that he was forced to terminate the call. A jury could infer from this evidence that the jail administrator, Tom Helmrich, was considering discharging Peterson on that day.

The County argues that Peterson has not shown that its legitimate, non-discriminatory reasons for the termination–Peterson's missed shifts, attitude, and performance problems–were a mere pretext for retaliation. Peterson notes that her supervisors deny complaining about Peterson's performance or attitude and deny characterizing her performance problems as "serious." In addition, Peterson suggests that a jury might infer from the timing of both Lenz and Helmrich's actions that the County was retaliating against her. Peterson does not deny destroying an inmate funds receipt, but argues that she was not trained on the procedure at the time, and that her supervisor agreed that this was not a deliberate violation of policy, but rather a training issue. He did not regard the matter as serious at the time. Peterson's supervisors, Dumbleton and Lenz, both deny complaining about her attitude or her performance.

Helmrich stated that Peterson had missed shifts that she previously accepted, and that this was a factor in her termination. There is conflicting evidence about how many shifts Peterson actually missed. Peterson only admits to missing November 20th, because she was worried about the reaction to her harassment complaint. She also argues that Tom Langevin missed several more shifts in the same time period without being disciplined or terminated. See Riceland, 151 F.3d at 820 (citing testimony that other employees "were not investigated as closely or punished as severely" in support of a finding of retaliation). Her supervisor, Dumbleton, did not recall Peterson having any problem with missing shifts. If Peterson's version of events is accepted, a jury could reasonably find that the decision to terminate her was made on November 20th, immediately following her conversation with Helmrich, and that it was prompted by her complaint of harassment, and not any deficiency in her performance.

After carefully reviewing the record, we conclude that there is sufficient evidence to permit a reasonable fact finder to determine that Scott County retaliated against Peterson on the basis of her complaints of discrimination and harassment.

## IV. Qualified Immunity

Peterson's § 1983 claim, and the defendants' immunity claims rest on the facts discussed above. Qualified immunity does not shield conduct that violates a clearly established statutory or constitutional right that would be known to a reasonable person. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The right to be free of gender discrimination is clearly established. Marshall v. Kirkland, 602 F.2d 1282, 1298 (8th Cir. 1979). Peterson has raised a genuine issue of material fact regarding the intentional gender discrimination; qualified immunity should not be granted to the defendants.

-13-

For the reasons stated above, the order of the district court granting summary judgment for the defendants is affirmed in part and reversed in part.  The case is remanded to the district court for further proceedings consistent with this opinion.

_____