# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2766

_____

| | | |
|---|---|---|
| Brigitte Wright, | * | |
| | * | |
| Plaintiff - Appellee; | * | |
| | * | |
| v. | * | |
| | * | |
| Rolette County, | * | |
| | * | |
| Defendant; | * | |
| | * | |
| Tony E. Sims, Rolette County | * | Appeal from the United States |
| Sheriff, in his individual and official | * | District Court for the District of |
| capacity, | * | North Dakota. |
| | * | |
| Defendant - Appellant; | * | |
| | * | |
| Eldon E. Moors; Joseph S. Baker; | * | |
| Kenneth F. Brien; Michael W. | * | |
| Laducer; Robert E. Leonard, Rollete | * | |
| County Commissioners, in their | * | |
| individual and official capacities, | * | |
| | * | |
| Defendants. | * | |
| | * | |

_____

Submitted: February 17, 2005
Filed: August 8, 2005

_____

Before BYE, HEANEY, and MELLOY, Circuit Judges.
_____

MELLOY, Circuit Judge.

Brigitte Wright ("Wright") brought this action under section 1983 for sexual harassment, alleging hostile work environment and constructive discharge against Sheriff Tony E. Sims ("Sims"). Sims moved for summary judgment based on qualified immunity. The district court denied qualified immunity, and Sims now brings this interlocutory appeal. We affirm in part and reverse in part.

## I.    Facts

The facts, taken in the light most favorable to the plaintiff, are described below. Wright is a Canadian citizen with permanent resident status in the United States. From September 2000 to October 2002, she worked in the Rolette County Sheriff's Department as an office deputy. During that time, Sims was the Sheriff of Rolette County. He was an elected official and was Wright's supervisor.

Use of vulgar, sexist language at the Sheriff's Office was a daily occurrence. During her employment, men in the office called Wright a "big-breasted Canadian secretary," a "dizzy bitch," and "Canadian bacon." Wright was offended and embarrassed by this name calling. Sims admits to this name calling and admits he did it in front of others. On one occasion, Sims referred to Wright as "Canadian bacon" at a Peace Officer's Association meeting, and all in attendance heard the comment. Sims also repeatedly made comments about a "potty cam" when Wright returned from the restroom. These comments embarrassed Wright to the point that she began using the restroom intended for female inmates. In another incident, Sims told Wright he could use a "blow job" after hearing her explain that some police training she had received allowed her to knock somebody out with one blow.

Sims made other comments to Wright about "rubbing [her] tits with toilet paper" and referred to her vagina as a "snapper." Sims also stroked his mustache while telling Wright he was "clearing off her seat." Sims admits to making this comment to other women in the office several times. Sims also made comments to Wright about lesbian activity. Without belaboring the point, Sims made numerous other unwelcome comments of a sexual nature that would be offensive to any reasonable person. Sims admits to making most of these comments. Wright claims she protested such activity, but her objections were ignored.

In December 2001, Wright passed Correctional Officer Basic training. Wright attended training at the police academy and learned that sexual harassment included unwanted comments that were sexual in nature. Wright did not report the offensive statements immediately after her training for fear of retaliation.

In January 2002, Wright discussed the situation with Rolette County Commissioner Eldon Moors, who told her there was nothing he could do about it. In March 2002, Wright reported the situation to Rolette County States Attorney Mary O'Donnell. Wright alleges that the county did nothing to remedy the situation.

On March 29, 2002, Dr. Mallory Leon examined Wright and diagnosed her with high blood pressure, anxiety, and depression. Her physician prescribed Celexa, for depression, Xanax for anxiety and panic attacks, and Lotensin for high blood pressure.

On April 1, 2002, Wright gave notice to Rolette County alleging that Sims' behavior created a hostile work environment. Rolette County hired Attorney Pat Morley to investigate the claim. Wright was placed on paid leave during the investigation. The investigation was completed on or about June 27, 2002. Morley concluded that the comments, though inappropriate, were not unwelcome. Wright's

administrative leave was terminated, and Wright returned to work on July 29, 2002. On October 25, 2002, Wright quit her job, claiming constructive discharge.

## II.    Procedure

On or about April 24, 2002, Wright filed a verified charge of discrimination with the North Dakota Department of Labor and the United States Equal Employment Opportunity Commission. On November 19, 2002 the North Dakota Department of Labor notified Wright of the termination of further proceedings on her charge of employment discrimination and that she had the right to bring a lawsuit within 272 days of the closure. On February 18, 2003, Wright commenced this § 1983 action against Sims, claiming sexual harassment in the form of a hostile work environment and constructive discharge. Sims moved for summary judgment based on qualified immunity, and the district court denied the motion. Sims now brings this immediate appeal on the issue of qualified immunity.

## III.    Discussion

### A.    Appellate Jurisdiction

While a denial of summary judgment is not generally reviewable on immediate appeal, we may review a denial of summary judgment based on qualified immunity on immediate appeal "to the extent that it turns on an issue of law." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). "Beyond this narrow issue, we may exercise jurisdiction only over issues that are inextricably intertwined, meaning issues that would necessarily be resolved when we resolve the question of qualified immunity." Schilcher v. Univ. of Arkansas, 387 F.3d 959, 962 (8th Cir. 2004) (internal quotations and citation omitted).

## B.    Standard of Review

We review "de novo the denial of a motion for summary judgment based on qualified immunity." Vaughn v. Ruoff, 253 F.3d 1124, 1127 (8th Cir. 2001). "At the summary judgment stage, we must view the facts in the light most favorable to . . . the nonmoving party below . . . and 'take as true those facts asserted by [the nonmoving party] that are properly supported in the record." Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir. 2001) (quoting Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001)). "'[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.'" Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) (quoting Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999)).

## C.    Qualified Immunity

"Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known." Ottman v. City of Independence, Missouri, 341 F.3d 751, 756 (8th Cir. 2003). We analyze qualified immunity issue in two steps. First, we ask whether the facts as asserted by the plaintiff "show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answer is no, we grant qualified immunity. If the answer is yes, we go on to determine "whether the right was clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

## D.    Hostile Work Environment
### 1. Was there a violation of a constitutional right?

"Sexual harassment by state actors violate[s] the Fourteenth Amendment and establishes a section 1983 action." Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003); see also Ottman, 341 F.3d at 756 ("We have held intentional gender

discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983.").

Sims argues that the plaintiff must meet a higher standard to prove sexual harassment under section 1983 than is required under Title VII. We find this to be an erroneous statement of law. Sexual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation and the elements of a prima facie case are the same regardless of which statute the plaintiff uses to seek relief. See Moring v. Ark. Dep't of Corr., 243 F.3d 452, 455 (8th Cir. 2001); see also Genosky v. Minnesota, 244 F.3d 989, 993 (8th Cir. 2001) (analyzing Title VII and section 1983 gender discrimination claims without using a different standard); Headley v. Bacon, 828 F.2d 1272 (8th Cir. 1987) (holding cause of action under Title VII and section 1983 identical for purposes of res judicata); Cross v. Alabama, 49 F.3d 1490, 1508 (11th Cir. 1995) (elements of sex discrimination causes of action are the same under section 1983 and Title VII); Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994) ("Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983."); Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982) (holding cause of action under Title VII and section 1983 the same); but see Annis v. County of Westchester, New York, 36 F.3d 251, 254 (2d Cir. 1994) ("While we do not subscribe to a categorical view that sexual harassment equals sex discrimination, we do agree that harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort.").

Sims further contends that his behavior cannot constitute sexual harassment because there is no allegation that he touched Wright or made sexual advances toward her. Our case law does not support this contention. Burns v. McGregor Elec. Indus., Inc., 989 F2d 959, 964 (8th Cir. 1993) (sexual harassment "can obviously result from conduct other than sexual advances" and the employee need not be "touched offensively") (citation omitted); see Smith v. St. Louis Univ., 109 F.3d 1261, 1267

(8th Cir. 1997) (summary judgment for employer reversed when plaintiff pled harasser made sexist comments on marriage, pregnancy, and plaintiff's appearance, and called her a "babe", but alleged no physical conduct nor sexual advances). Further, 29 C.F.R. § 1604.11 states, "Unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Thus, verbal harassment of a sexual nature which creates an offensive working environment fits the regulation's definition of sexual harassment.

To make out a prima facie case of sexual harassment under section 1983, Wright must prove:

> (1) that she was a member of a protected group,
> (2) the occurrence of unwelcome harassment,
> (3) a causal nexus between the harassment and her membership in the protected group,
> (4) that the harassment affected a term, condition, or privilege of employment, and
> (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004). To determine whether the harassment affected a term, condition, or privilege of employment, we consider "the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiff's performance on the job." Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (internal

citations omitted). In order to affect the term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to create an objectively hostile work environment, and in addition, must be subjectively perceived by the plaintiff as abusive. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1047 (8th Cir. 2005).

We find that the facts as alleged show the violation of Wright's constitutional rights under the Equal Protection Clause. Wright is a member of a protected group and alleges that Sims, her supervisor, harassed her in a highly sexualized way. He targeted Wright and made extremely vulgar, sexual comments about her, sometimes in front of her colleagues. Wright alleges that the harassment, which took place over a two-year period, offended and embarrassed her. "Neither 'simple teasing' and 'offhand comments,' nor 'sporadic use of abusive language, gender-related jokes, and occasional teasing' amount to discriminatory changes in the terms and conditions of employment or actionable harassment." Peterson v. Scott County, 2005 WL 1048103, at *9 (8th Cir. May 6, 2005). However, Sims' behavior was more serious than simple teasing, and it was not sporadic nor isolated. The effect of the harassment was so serious that Wright ultimately sought medical treatment for depression, high blood pressure, and anxiety caused by the harassment. Wright also alleges that she complained to Sims and to the county and that nothing was done to stop the behavior. These facts, if proven to be true, support a claim for sexual harassment.

### 2. Was the right clearly established?

"The right to be free of gender discrimination is clearly established." Peterson, 2005 WL 1048103 at *10. Sims does not dispute that the right to be free of sexual harassment was not clearly established at the time of his actions. Rather, he contends there can be no sexual harassment under section 1983 unless there is physical touching or a request for sexual favors, and therefore the right to be free of behavior such as his was not clearly established. As stated above, we believe this is an erroneous view of the law. Taking the facts in the light most favorable to Wright,

Sims' behavior constituted gender discrimination. A reasonable officer would have known that it was illegal to subject Wright to such treatment in the workplace. Therefore, Sims is not entitled to qualified immunity or summary judgment on the hostile work environment claim.

### E.  Constructive Discharge
#### 1.  Was there a violation of a constitutional right?

Wright also claimed that the harassment caused her to be constructively discharged. "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." Baker v. John Morrell & Co., 382 F.3d 816, 829 (8th Cir. 2004). To prove a case of constructive discharge, a plaintiff must show: (1) "that a reasonable person in her situation would find the working conditions intolerable" and (2) that "the employer . . . intended to force the employee to quit." Gartman v. Gencorp Inc., 120 F.3d 127, 130 (8th Cir. 1997). If the plaintiff cannot show the employer consciously intended her to quit, she can still prevail on a constructive discharge claim if "'the employer . . . could have reasonably foreseen that the employee would [quit] as a result of its actions.'" Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 717 (8th Cir. 2003) (quoting Kerns v. Capitol Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir. 1999)).

In this case, Wright has failed to meet this standard, and therefore Sims is entitled to qualified immunity on the constructive discharge claim. While Sims' behavior was serious and reprehensible, Wright has not shown that her work conditions would be intolerable to a reasonable person. In contrast, it appears that the harassment all but stopped after Wright's return to work following her leave period. Wright was back at work from July 2002 until she resigned in October 2002. Wright admitted that Sims' behavior during this period was improved. In fact, there were no incidents of harassing behavior during July, August, or September. Wright stated that the harassment began again in October, but even then, the environment was "not like

it was before," referring to more serious harassment in the past. This evidence shows that the work environment was not so intolerable so as to force Wright to quit. Therefore, Wright has failed to show that the facts as alleged in regard to the constructive discharge claim show a violation of a constitutional right. Sims is entitled to qualified immunity and summary judgment on this claim.

## IV.    Conclusion

We find that Sims is entitled to qualified immunity on the constructive discharge claim, but not entitled to qualified immunity on the hostile work environment claim. We remand to the district court for proceedings consistent with this opinion.

BYE, Circuit Judge, concurring.

I concur with the majority as to the facts as alleged by Ms. Wright, if proven true, could support a claim for sexual harassment, but not a claim for constructive discharge. I write separately in regards to section III.D.2 of the opinion, which discusses the clearly established prong of the qualified immunity inquiry. The majority declares "[t]he right to be free of gender discrimination is clearly established." This hasty resolution of the clearly established prong ignores the Supreme Court's pronouncements in Anderson v. Creighton, 483 U.S. 635, 640 (1987) and Saucier v. Katz, 533 U.S. 194, 201 (2001). It is now well-settled the clearly established analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003) (quoting Saucier, 533 U.S. at 201). Although we do not require a precise factual analog to precedent, in light of pre-existing law the unlawfulness of specific conduct must be apparent to a reasonably competent official. Anderson, 483 U.S. at 640; Saucier, 533 U.S. at 202. The importance of this particularized inquiry cannot be discounted because it is the teeth of the qualified immunity defense. Without these teeth, the defense lacks the bite essential in promoting the compelling public policy

-10-

objectives underlying it. See Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982) (discussing the societal costs associated with litigation against public officials).

In other words, because of the societal costs associated with litigation against public officials, id., we hold our officials individually liable only for transgressing bright constitutional lines. Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)). Interestingly, in the hostile work environment context we have stated, "[t]here is no bright line between sexual harassment and merely unpleasant conduct . . . ." Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004) (quoting Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997)). This statement, though telling of the difficulty we face in analyzing hostile work environment cases, must not be taken literally because our case law clearly establishes at least two lines bright enough for officials such as Sheriff Sims to take notice.

Our case law, for instance, suggests a person engaged in repetitive offensive touching in combination with pervasive sexual innuendo has clearly crossed the line. Henthorn, 359 F.3d at 1027 n.3 ("[W]e have found to be actionable conduct that involved pervasive sexual innuendo and repetitive offensive touching."); Baker v. John Morrell & Co., 382 F.3d 816, 828 (8th Cir. 2004) (same); Eich v. Bd. of Regents, 350 F.3d 752, 755-56 (8th Cir. 2003) (en banc) (finding conduct sufficiently severe where the victim was frequently touched in numerous suggestive ways and subjected to simulated sex acts); Beard v. Flying J., Inc., 266 F.3d 792, 797 (8th Cir. 2001) (affirming judgment for plaintiff where another employee frequently brushed, rubbed and flicked plaintiff's breasts and pointed to his crotch); Henderson v. Simmons Foods, Inc., 217 F.3d 612, 616-17 (8th Cir. 2000) (upholding a jury verdict where plaintiff was subjected to physical touching, obscene hand gestures, and a verbal barrage of crude sexual vulgarities); Bailey v. Runyon, 167 F.3d 466, 469 (8th Cir. 1999) (upholding a jury verdict where male co-worker grabbed plaintiff's crotch and requested opportunity to perform oral sex on plaintiff three or four times a week);

-11-

Howard v. Burns Bros. Inc, 149 F.3d 835, 840 (8th Cir. 1998) (upholding a jury verdict where the victim was subjected to chronic sexual innuendo and unwanted physical contact); Hathaway,132 F.3d at 1217-18 (upholding a jury verdict where the plaintiff was subject to offensive physical contact and constant snickering and guttural noises from her co-workers); Hall v. Gus Const. Co., 842 F.2d 1010, 1012-14 (8th Cir. 1988) (finding unwanted physical contact, repeated requests to engage in sexual acts and continuous verbal abuse sufficiently severe or pervasive as a matter of law). Thus, based upon our case law, it would be apparent to a reasonable official by engaging in repetitive offensive touching along with pervasive sexual innuendo does cross the boundary between merely offensive conduct and actionable sexual harassment.

Ms. Wright complains of no repetitive offensive touching, but, as the majority points out, the boundary is not drawn at repetitive offensive touching. A harasser may cross the line without frequently physically assaulting the victim. See Burns v. McGregor Elec. Indus., Inc., 989 F.2d 959, 964 (8th Cir. 1993) ("Sexual harassment can take place in many different ways."). The line between merely offensive conduct and sexual harassment may be crossed, even without physical contact, where a person engages in pervasive sexual innuendo. See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1159 (8th Cir. 1994) (finding a situation where an employee's supervisor continuously fondled his genitals in front of her and used lewd and sexually inappropriate language to be sufficient as a matter of law to constitute sexual harassment). Our case law clearly establishes sexual innuendo or discriminatory conduct is pervasive or abusive when it is both frequent and severe. See id.; see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (listing the circumstances to be considered in determining whether an environment is hostile or abusive, including: the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance).

-12-

That is not to say our case law is a model of clarity in the absence of frequent and severe discriminatory conduct. In fact, the line between merely offensive conduct and actionable sexual harassment is blurred where the harassment, though severe, occurs relatively infrequently,[1] or where the complained of conduct, though frequent, is relatively innocuous.[2] But the conduct at issue here is neither infrequent nor innocuous. Thus, if Ms. Wright's allegations turn out to be true, Sheriff Sims's conduct falls within the realm of frequent and severe sexual innuendo and outside the protection of the qualified immunity defense.

HEANEY, Circuit Judge, dissenting.

I would affirm the district court on both the hostile work environment and constructive discharge counts. Thus, I respectfully dissent from the majority's opinion insofar as it holds that Rolette County Sheriff Tony Sims is entitled to qualified immunity on Brigitte Wright's claim of constructive discharge.

A plaintiff claiming constructive discharge based on a hostile work environment must make two showings: first, she must show the presence of harassing behavior so pervasive or severe that it altered the plaintiff's working conditions. Pa.

---

[1]See LeGrand v. Area Res. for Cmty. & Human Servs., 394 F.3d 1098, 1100-03 (8th Cir. 2005) (finding severe, but infrequent conduct insufficient as a matter of law to support a claim for hostile work environment); Duncan v. GMC, 300 F.3d 928, 931-34 (8th Cir. 2002) (en banc) (same).

[2]Compare Ottman v. City of Independence, 341 F.3d 751, 760 (8th Cir. 2003) (frequent, but relatively innocuous conduct not enough); Henthorn, 359 F.3d at 1028 (same); Tuggle, 348 F.3d at 714, 721-22 (same); Alagna v. Smithville R-II Sch. Dist., 324 F.3d, 975, 977-78, 980 (8th Cir. 2003) (same); Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 961, 967 (8th Cir. 2003) (same); with Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1106-09 (8th Cir. 1998) (frequent, relatively innocuous conduct sufficient); Williams v. City of Kansas City, 223 F.3d 749, 753 (8th Cir. 2000) (same); Smith v. St. Louis Univ., 109 F.3d 1261, 1264-65 (8th Cir. 1997) (same).

State Police v. Suders, 124 S. Ct. 2342, 2347 (2004). Second, she must demonstrate that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." Id.; see also id. at 2351 ("The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"). The district court found both prongs were met, and I agree.

Wright was constructively discharged from her position due to the extreme, harassment-based humiliation she was forced to endure. Sims directed an office in which sexually explicit and offensive conduct was the order of the day. Wright was the sole female employee of that office, and thus regularly found herself as the target of Sims' lewd behavior and comments. Sims apparently found his own behavior entirely acceptable; prior to Wright's first formal complaint on April 1, 2002, Sims was of the belief that sexual harassment included physical touching and unwanted advances,[3] but not verbal abuse of a sexual nature. Sims had no formal training on sexual harassment, yet the County policy (which Sims had apparently ignored) clearly prohibited "[a]ction, words, jokes or comments based on an individual's sex," as well as "[v]erbal abuse of a sexual nature." (J.A. at 151.)

The context of Wright's workplace is relevant not only to her hostile work environment claim, but also to her claim of constructive discharge. The majority finds that the environment was not so pervasively hostile that Wright was forced to quit, because the harassment "all but stopped" once she returned from work following investigation of her complaint. Ante at 9. While Sims' behavior was slightly better for a time, this does not tell the entire story. Wright returned to work in late July of

---

[3]Even under Sims' own definition of harassment, some of Sims' comments would certainly meet his standard. They included: stating he could not pay attention while Wright was talking because he was staring at her breasts, vocalizing his desire for oral sex when Wright recounted a police training program she had completed, and suggesting that he would like to perform oral sex on Wright.

-14-

2002 after the County concluded that there was no wrongdoing on the part of Sims. This forced Wright to return to an environment that this court has found to be hostile, with no prospect of improvement in Sims' behavior.

In the factually similar case of Henderson v. Simmons Foods, Inc., 217 F.3d 612 (8th Cir. 2000), our court rejected this same argument. In Henderson, the plaintiff was subjected to a hostile work environment stemming from coworkers' targeted sexual vulgarities and harassment. After the plaintiff complained to her supervisor, the offending coworkers discontinued their verbal harassment. One coworker, however, directed offensive hand gestures at the plaintiff. When the plaintiff complained, her supervisor did nothing further. Eventually, the plaintiff resigned and successfully claimed she was constructively discharged. On appeal, the defendant argued that the verdict on constructive discharge could not stand because the plaintiff's conditions improved after her complaints. We disagreed:

> Simmons's half-hearted responses to Henderson's complaints, Simmons's threat against Henderson's job, Simmons's poorly conducted investigation, Simmons's failure to transfer either Henderson or Sanchez [the offending employee], and Simmons's failure to respond to Sanchez's lewd gestures toward Henderson certainly demonstrates the existence of an intolerable working environment where an employee essentially is left with no choice other than the termination of her employment.

Id. at 617.

There is nothing of note to distinguish this case from Henderson. When Wright reported Sims' misconduct to Rolette County State's Attorney Mary O'Donnell, O'Donnell met the complaint with skepticism and disbelief. When Wright complained to Rolette County Commissioner Eldon Moors about Sims, Moors told her he was sorry, but that "All [the County] can do is control his budget," and "that's the way it is." (Wright Dep. at 127.) Finally, when the County investigated the

-15-

matter, it used an investigator whose deposition reveals he had no understanding of even basic sexual harassment law. When the investigator's report concluded that Sims engaged in no wrongdoing with respect to Wright, she was forced to return to the same office, with the same supervisor, without even an acknowledgment that she indeed had been experiencing unlawful sexual harassment.

We would have a different case if the investigation had found that Sims' conduct toward Wright was objectionable, or if Sims or the County assured Wright that the environment would improve upon her return. That is not the case, however. As the majority notes, the atmosphere was better for Wright when she returned, but not for long. After a relatively short respite, Sims returned to his pre-complaint ways, making sexually explicit comments and using offensive terms in Wright's presence. As I read the majority opinion, it would require Wright to again complain when Sims engaged in inappropriate behavior upon her return, or to wait until Sims' conduct escalated to his past benchmarks for impropriety. I would not impose this demand. The investigation conducted at the behest of the County found no violation of the County's sexual harassment policy, and forced Wright to return to an environment that the district court and this court have found objectively hostile.[4] Even though an employee must generally give the employer an opportunity to correct the problem before resigning, Campos v. City of Blue Springs, Mo., 289 F.3d 546, 550-51 (8th Cir. 2002), where "an employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge." Ogden v. Wax Works, Inc., 214 F.3d 999, 1008 (8th Cir. 2000); accord Delph v. Dr. Pepper Bottling Co., 130 F.3d 349, 356 & n.5 (8th Cir. 1997) (excusing a plaintiff's failure to

---

[4]Inexplicably, the report also discounted Wright's complaints about Sims' conduct because "[t]here is no evidence other than that of Ms. Wright that there was ever any complaint made to Sheriff Sims about the teasing, language, or crude jokes." (J.A. at 159.) I am aware of no requirement in the law that a victim of sexual harassment must have their complaints witnessed or joined by others before they are considered legitimate.

complain to supervisors about his hostile work environment where they created and condoned the objectionable atmosphere). Whether Sims' conduct, and correspondingly, the atmosphere for Wright, had improved to the point that her constructive discharge claim fails is clearly a question of fact. Thus, I would affirm the district court's denial of summary judgment on this matter.

_____