MELLOY, Circuit Judge.
Brigitte Wright (“Wright”) brought this action under section 1983 for sexual harassment, alleging hostile work environment and constructive discharge against Sheriff Tony E. Sims (“Sims”). Sims moved for summary judgment based on qualified immunity. The district court denied qualified immunity, and Sims now brings this interlocutory appeal. We affirm in part and reverse in part.
I. Facts
The facts, taken in the light most favorable to the plaintiff, are described below. Wright is a Canadian citizen with permanent resident status in the United States. From September 2000 to October 2002, she worked in the Rolette County Sheriffs Department as an office deputy. During that time, Sims was the Sheriff of Rolette County. He was an elected official and was Wright’s supervisor.
Use of vulgar, sexist language at the Sheriffs Office was a daily occurrence. During her employment, men in the office called Wright a “big-breasted Canadian secretary,” a “dizzy bitch,” and “Canadian bacon.” Wright was offended and embarrassed by this name calling. Sims admits to this name calling and admits he did it in front of others. On one occasion, Sims referred to Wright as “Canadian bacon” at a Peace Officer’s Association meeting, and all in attendance heard the comment. Sims also repeatedly made comments about a “potty cam” when Wright returned from the restroom. These comments embarrassed Wright to the point that she began using the restroom intended for female inmates. In another incident, Sims told Wright he could use a “blow job” after hearing her explain that some police train *883 ing she had received allowed her to knock somebody out with one blow.
Sims made other comments to Wright about “rubbing [her] tits with toilet paper” and referred to her vagina as a “snapper.” Sims also stroked his mustache while telling Wright he was “clearing off her seat.” Sims admits to making this comment to other women in the office several times. Sims also made comments to Wright about lesbian activity. Without belaboring the point, Sims made numerous other unwelcome comments of a sexual nature that would be offensive to any reasonable person. Sims admits to making most of these comments. Wright claims she protested such activity, but her objections were ignored.
In December 2001, Wright passed Correctional Officer Basic training. Wright attended training at the police academy and learned that sexual harassment included unwanted comments that were sexual in nature. Wright did not report the offensive statements immediately after her training for fear of retaliation.
In January 2002, Wright discussed the situation with Rolette County Commissioner Eldon Moors, who told her there was nothing he could do about it. In March 2002, Wright reported the situation to Ro-lette County States Attorney Mary O’Donnell. Wright alleges that the county did nothing to remedy the situation.
On March 29, 2002, Dr. Mallory Leon examined Wright and diagnosed her with high blood pressure, anxiety, and depression. Her physician prescribed Celexa, for depression, Xanax for anxiety and panic attacks, and Lotensin for high blood pressure.
On April 1, 2002, Wright gave notice to Rolette County alleging that Sims’ behavior created a hostile work environment. Rolette County hired Attorney Pat Morley to investigate the claim. Wright was placed on paid leave during the investigation. The investigation was completed on or about June 27, 2002. Morley concluded that the comments, though inappropriate, were not unwelcome. Wright’s administrative leave was terminated, and Wright returned to work on July 29, 2002. On October 25, 2002, Wright quit her job, claiming constructive discharge.
II. Procedure
On or about April 24, 2002, Wright filed a verified charge of discrimination with the North Dakota Department of Labor and the United States Equal Employment Opportunity Commission. On November 19, 2002 the North Dakota Department of Labor notified Wright of the termination of further proceedings on her charge of employment discrimination and that she had the right to bring a lawsuit within 272 days of the closure. On February 18, 2003, Wright commenced this § 1983 action against Sims, claiming sexual harassment in the form of a hostile work environment and constructive discharge. Sims moved for summary judgment based on qualified immunity, and the district court denied the motion. Sims now brings this immediate appeal on the issue of qualified immunity.
III. Discussion
A. Appellate Jurisdiction
While a denial of summary judgment is not generally renewable on immediate appeal, we may review a denial of summary judgment based on qualified immunity on immediate appeal “to the extent that it turns on an issue of law.” Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). “Beyond this narrow issue, we may exercise jurisdiction only over issues that are inextricably intertwined, meaning issues that would necessarily be resolved when we resolve the *884 question of qualified immunity.” Schilcher v. Univ. of Arkansas, 387 F.3d 959, 962 (8th Cir.2004) (internal quotations and citation omitted).
B. Standard of Review
We review “de novo the denial of a motion for summary judgment based on qualified immunity.” Vaughn v. Ruoff, 253 F.3d 1124, 1127 (8th Cir.2001). “At the summary judgment stage, we must view the facts in the light most favorable to ... the nonmoving party below ... and ‘take as true those facts asserted by [the nonmoving party] that are properly supported in the record.’ ” Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir.2001) (quoting Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir.2001)). “ ‘[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.’ ” Gregoire v. Class, 236 F.3d 413, 417 (8th Cir.2000) (quoting Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir.1999)).
C. Qualified Immunity
“Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known.” Ottman v. City of Independence. Missouri, 341 F.3d 751, 756 (8th Cir.2003). We analyze qualified immunity issue in two steps. First, we ask whether the facts as asserted by the plaintiff “show the officer’s conduct violated a constitutional right.” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the answer is no, we grant qualified immunity. If the answer is yes, we go on to determine “whether the right was clearly established.” Id. “The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Id. at 202, 121 S.Ct. 2151.
D.Hostile Work Environment
1. Was there a violation of a constitutional right?
“Sexual harassment by state actors violate[s] the Fourteenth Amendment and establishes a section 1983 action.” Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir.2003); see also Ottman, 341 F.3d at 756 (‘We have held intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983.”).
Sims argues that the plaintiff must meet a higher standard to prove sexual harassment under section 1983 than is required under Title VII. We find this to be an erroneous statement of law. Sexual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation and the elements of a prima facie case are the same regardless of which statute the plaintiff uses to seek relief. See Moring v. Ark. Dep’t of Corr., 243 F.3d 452, 455 (8th Cir.2001); see also Genosky v. Minnesota, 244 F.3d 989, 993 (8th Cir.2001) (analyzing Title VII and section 1983 gender discrimination claims without using a different standard); Headley v. Bacon, 828 F.2d 1272 (8th Cir.1987) (holding cause of action under Title VII and section 1983 identical for purposes of res judicata); Cross v. Alabama, 49 F.3d 1490, 1508 (11th Cir.1995) (elements of sex discrimination causes of action are the same under section 1983 and Title VII); Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir.1994) (“Courts may apply the standards devel *885 oped in Title VII litigation to similar litigation under § 1983.”); Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n. 16 (11th Cir.1982) (holding cause of action under Title VII and section 1983 the same); but see Annis v. County of Westchester, New York, 36 F.3d 251, 254 (2d Cir.1994) (“While we do not subscribe to a categorical view that sexual harassment equals sex discrimination, we do agree that harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort.”).
Sims further contends that his behavior cannot constitute sexual harassment because there is no allegation that he touched Wright or made sexual advances toward her. Our case law does not support this contention. Burns v. McGregor Elec. Indus., Inc., 989 F.2d 959, 964 (8th Cir.1993) (sexual harassment “can obviously result from conduct other than sexual advances” and the employee need not be “touched offensively”) (citation omitted); see Smith v. St. Louis Univ., 109 F.3d 1261, 1267 (8th Cir.1997) (summary judgment for employer reversed when plaintiff pled harasser made sexist comments on marriage, pregnancy, and plaintiffs appearance, and called her a “babe”, but alleged no physical conduct nor sexual advances). Further, 29 C.F.R. § 1604.11 states, “Unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual’s work performance or creating an intimidating, hostile, or offensive working environment.” Thus, verbal harassment of a sexual nature which creates an offensive working environment fits the regulation’s definition of sexual harassment.
To make out a prima facie case of sexual harassment under section 1983, Wright must prove:
(1) that she was a member of a protected group,
(2) the occurrence of unwelcome harassment,
(3) a causal nexus between the harassment and her membership in the protected group,
(4) that the harassment affected a term, condition, or privilege of employment, and
(5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.
Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir.2004). To determine whether the harassment affected a term, condition, or privilege of employment, we consider “the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiffs performance on the job.” Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir.2004). “Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.” Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (internal citations omitted). In order to affect the term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to create an objectively hostile work environment, and in addition, must be subjectively perceived by the plaintiff as abusive. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1047 (8th Cir.2005).
We find that the facts as alleged show the violation of Wright’s constitutional rights under the Equal Protection Clause. Wright is a member of a protect *886 ed group and alleges that Sims, her supervisor, harassed her in a highly sexualized way. He targeted Wright and made extremely vulgar, sexual comments about her, sometimes in front of her colleagues. Wright alleges that the harassment, which took place over a two-year period, offended and embarrassed her. “Neither ‘simple teasing’ and ‘offhand comments,’ nor ‘sporadic use of abusive language, gender-related jokes, and occasional teasing’ amount to discriminatory changes in the terms and conditions of employment or actionable harassment.” Peterson v. Scott County, 406 F.3d 515, 524, 2005 WL 1048103, at *6 (8th Cir. May 6, 2005). However, Sims’ behavior was more serious than simple teasing, and it was not sporadic nor isolated. The effect of the harassment was so serious that Wright ultimately sought medical treatment for depression, high blood pressure, and anxiety caused by the harassment. Wright also alleges that she complained to Sims and to the county and that nothing was done to stop the behavior. These facts, if proven to be true, support a claim for sexual harassment.
2. Was the right clearly established?
“The right to be free of gender discrimination is clearly established.” Peterson, 406 F.3d at 526, 2005 WL 1048103 at *7. Sims does not dispute that the right to be free of sexual harassment was not clearly established at the time of his actions. Rather, he contends there can be no sexual harassment under section 1983 unless there is physical touching or a request for sexual favors, and therefore the right to be free of behavior such as his was not clearly established. As stated above, we believe this is an erroneous view of the law. Taking the facts in the light most favorable to Wright, Sims’ behavior constituted gender discrimination. A reasonable officer would have known that it was illegal to subject Wright to such treatment in the workplace. Therefore, Sims is not entitled to qualified immunity or summary judgment on the hostile work environment claim.
E. Constructive Discharge
1. Was there a violation of a constitutional right?
Wright also claimed that the harassment caused her to be constructively discharged. “Constructive discharge occurs when an employer deliberately renders the employee’s working conditions intolerable, thereby forcing her to quit.” Baker v. John Morrell & Co., 382 F.3d 816, 829 (8th Cir.2004). To prove a case of constructive discharge, a plaintiff must show: (1) “that a reasonable person in her situation would find the working conditions intolerable” and (2) that “the employer ... intended to force the employee to quit.” Gartman v. Gencorp Inc., 120 F.3d 127, 130 (8th Cir.1997). If the plaintiff cannot show the employer consciously intended her to quit, she can still prevail on a constructive discharge claim if “ ‘the employer ... could have reasonably foreseen that the employee would [quit] as a result of its actions.’ ” Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 717 (8th Cir.2003) (quoting Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir.1999)).
In this ease, Wright has failed to meet this standard, and therefore Sims is entitled to qualified immunity on the constructive discharge claim. While Sims’ behavior was serious and reprehensible, Wright has not shown that her work conditions would be intolerable to a reasonable person. In contrast, it appears that the harassment all but stopped after Wright’s return to work following her leave period. Wright was back at work from July 2002 *887 until she resigned in October 2002. Wright admitted that Sims’ behavior during this period was improved. In fact, there were no incidents of harassing behavior during July, August, or September. Wright stated that the harassment began again in October, but even then, the environment was “not like it was before,” referring to more serious harassment in the past. This evidence shows that the work environment was not so intolerable so as to force Wright to quit. Therefore, Wright has failed to show that the facts as alleged in regard to the constructive discharge claim show a violation of a constitutional right. Sims is entitled to qualified immunity and summary judgment on this claim.
IV. Conclusion
We find that Sims is entitled to qualified immunity on the constructive discharge claim, but not entitled to qualified immunity on the hostile work environment claim. We remand to the district court for proceedings consistent with this opinion.