# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3015

———————

United States of America,              *
                                 *
        Appellee,           *
                                 *  Appeals from the United States
     v.                    *  District Court for the
                                 *  Eastern District of Arkansas.
Carl Wesley Harbin,            *
                                 *
        Appellant.        *

———————

No. 96-3022

———————

United States of America,              *
                                 *
        Appellee,           *
                                 *
     v.                    *
                                 *
Carol Elaine Harbin,          *
                                 *
        Appellant.        *

———————

Submitted: February 11, 1997

Filed: May 5, 1997

———————

Before BOWMAN and WOLLMAN, Circuit Judges, and BOGUE,[1] District Judge.

———————

BOWMAN, Circuit Judge.

---

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

A jury found Carol Elaine Harbin and Carl Wesley Harbin, husband and wife, guilty of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 (1994). In addition, the jury found Carol Harbin guilty of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a) (1994), and use of the United States mail in the delivery of methamphetamine in violation of 21 U.S.C. § 843(b) (1994). The Harbins appeal their convictions, and we affirm.

The Harbins' primary argument on appeal is that the District Court[2] committed reversible error in their joint trial by admitting into evidence the grand jury testimony of Pam Southard, Carol Harbin's sister, under the Federal Rule of Evidence 804(b)(5) hearsay exception. Southard read a one-page statement before the grand jury indicating that she had been advised by Carol Harbin that a package containing a candle and addressed to their deceased father was due to arrive at their mother's trailer on May 31, 1994. Southard was directed to phone Harbin when the package was delivered. This package, containing a hollowed-out candle filled with methamphetamine, was intercepted by postal inspectors and was the subject of a controlled delivery on June 6, 1994. Southard retrieved the package from her mother's street-side mail box and was present in the home when the officers executed a search warrant following the controlled delivery.

The Harbins each contend that the admission of this testimony violated Federal Rule of Evidence 802, the hearsay rule, and the Sixth Amendment's Confrontation Clause, both of which require that the prosecution first establish the declarant's unavailability prior to admission of her out-of-court statement. We review the

---

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

District Court's decision to admit evidence under Rule 804(b)(5) for an abuse of discretion.  See United States v. Woolbright, 831 F.2d 1390, 1397 (8th Cir. 1987).

Hearsay statements generally excluded from evidence by Federal Rule of Evidence 802 may be admitted under Rule 804(b)(5) if the proponent of the statement is able to make a threshold showing that the declarant is unavailable.[3]  "A good faith attempt to locate and subpoena the witness satisfies the proponent's obligation to demonstrate that the witness is unavailable."  United States v. Flenoid, 949 F.2d 970, 972 (8th Cir. 1991).  Likewise, in order to comply with the requirements of the Confrontation Clause, "the prosecution must either produce, or demonstrate the unavailability of, the declarant."  Ohio v. Roberts, 448 U.S. 56, 65 (1980); cf. White v. Illinois, 502 U.S. 346, 354 (1992) (clarifying that "Roberts stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding").  "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness."  Ohio v. Roberts, 448 U.S. at 74.  The Harbins argue that the prosecution failed to demonstrate that a good faith effort was made to procure Pam Southard's presence at trial and that the District Court therefore erred in admitting her grand jury testimony into evidence.

Shortly before trial, the prosecution filed a motion notifying the Harbins of its intent to introduce Pam Southard's grand jury

---

[3]Federal Rule of Evidence 804(a)(5) defines "[u]navailability as a witness" to include situations in which the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means."

testimony due to an inability to locate Southard for service of a subpoena to appear at trial. The District Court conducted a preliminary hearing on the admissibility of Southard's grand jury testimony wherein the prosecutor stated, "I don't know where she is. We've been trying to serve her. . . . The state police has [sic] tried to find her." Tr. of Proceedings vol. 1 at 11. After vague references to efforts made by local police and investigators to locate and serve Southard, the prosecutor concluded that "Pam Southerd [sic] knows there's a subpoena for her, but she doesn't want to testify against her sister." Id. at 12.

In support of its motion to introduce Southard's grand jury testimony, the prosecutor called Southard's mother, Edith Barger, to testify at the preliminary hearing. Barger testified that Southard lived in a trailer next to hers in Judsonia, Arkansas, until June 1994; that Southard had moved and was working at a motel in Kingston, Mississippi; and that she, Barger, had relayed this information to police each time they appeared at her home to serve the subpoena on Southard. While Barger testified that she knew of no address for Southard, she did confirm that she addressed mail to Southard in care of general delivery in Kingston, Mississippi. Barger further testified that Southard "usually comes home every two or three weeks." Id. at 18. When asked whether Southard was reluctant to testify against her sister, Barger stated, "She hasn't said. . . . I don't believe she would. . . . That was my opinion." Id. at 19 (emphasis added). When asked whether Southard was deliberately avoiding service, Barger stated, "I don't think so, because I've told them everytime they've come out where she's at." Id. at 21.

After this hearing the District Court concluded, based on the prosecutor's remarks and Barger's testimony, that Southard "has avoided efforts on the part of the government to serve a subpoena.

. . . [T]he Court is of the view that she is willfully and deliberately avoiding that subpoena." Id. at 24. Consequently, the District Court allowed the prosecution to read Southard's grand jury testimony into evidence during the Harbins' trial.

We are unable to conclude, based on these facts, that the government carried its burden of proving that it made a good faith effort to locate Southard prior to trial. The prosecution failed to establish that serious attempts were made to secure Southard's attendance at trial. General statements, without detailed facts, regarding the scope of the prosecution's search are insufficient to establish that the requisite good-faith effort was made to locate Southard. No evidence was presented that the prosecution tried to serve Southard in Kingston, Mississippi, or that reasonable efforts were made to serve Southard when she was present at Barger's trailer which, according to Barger, occurred "every two or three weeks." The prosecution presented no evidence to corroborate its conclusion that Southard was avoiding service deliberately because she did not want to testify against her sister. The District Court abused its discretion in admitting Southard's grand jury testimony on the basis of unavailability.

Because we hold that the government failed to establish Southard's unavailability, we need not and do not consider the Harbins' arguments that the government failed to comply with the remaining requirements for admissibility of hearsay statements under Rule 804(b)(5) or under the Confrontation Clause.

While we do not believe that the government carried its burden of proving that Southard was unavailable to testify at trial, the District Court's improper admission of her grand jury testimony requires reversal of the Harbins' convictions only if the error was not harmless. See Fed. R. Crim. P. 52(a). "An error is harmless

if the reviewing court, after viewing the entire record, determines that no substantial rights of the defendant were affected, and that the error did not influence or had only a very slight influence on the verdict." United States v. Cortez, 935 F.2d 135, 140 (8th Cir. 1991) (quoting United States v.McCrady, 774 F.2d 868, 874 (8th Cir. 1985) (citations omitted)), cert. denied, 502 U.S. 1062 (1992); see also United States v. Roberts, 844 F.2d 537, 547 (8th Cir.), cert. denied, 488 U.S. 867, 983 (1988). After a review of the entire record, we conclude that no substantial rights of the defendants were affected, and that the admission of Southard's grand jury testimony had little or no influence on the verdict.

The prosecution presented testimony from a number of co-conspirators who described the Harbins' involvement in the drug conspiracy. Police officers and postal employees recounted the details surrounding controlled deliveries to the Harbins' residence of packages from California containing drugs. Officers also described the drugs and drug paraphernalia seized from the Harbins' residence and outbuildings during execution of a search warrant after a controlled delivery. Southard's grand jury testimony merely provided cumulative evidence that Carol Harbin directed her California drug supplier to address a package containing methamphetamine, intended for Carol Harbin, to Harbin's deceased father at her mother's trailer. This information was corroborated by a number of the co-conspirators who heard Carol Harbin discuss the impending arrival of the package and who actually testified at trial. In these circumstances, the admission of Southard's grand jury testimony was harmless error.

The convictions of the Harbins are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT