BYE, Circuit Judge,
concurring in part and dissenting in part.
I concur in the opinion of the Court except with respect to Part II.A, which concludes Shelia Smith did not present sufficient evidence to create a genuine issue of material fact on her hostile work environment claim. Because I believe her complaint and the record each do indeed support such a claim, I respectfully dissent.
As the majority notes, “[sjummary judgment should be granted in employment discrimination cases only if the evidence could not support any reasonable inference of discrimination” and should only be affirmed if the employer is entitled to judgment as a matter of law. Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1055 (8th Cir.2007).
The fourth element of a hostile work environment claim under Title VII requires the plaintiff to provide sufficient evidence showing “the harassment affected a term, condition, or privilege of his employment.” Id. at 1058. In order to satisfy this prong, Smith must provide sufficient evidence that she reasonably perceived the racial harassment was “severe or pervasive.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). However, she does not need to show there was a physical manifestation of the harm, so long as there is evidence the working environment was affected in some way. Id. at 21, 114 S.Ct. 367. In deciding whether this element is satisfied, courts must look at “all the circumstances” to determine “whether an environment is sufficiently hostile or abusive.” See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The majority concludes Smith did not present sufficient evidence “the harassment affected a term, condition, or privilege of [her] employment.” Elnashar, 484 F.3d at 1058. I disagree.
I believe the district court improperly reviewed incidents of racial hostility by separating Smith’s allegations into three categories instead of viewing the “totality of the circumstances.” Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 519 (8th Cir.2010). At summary judgment, the district court categorized the incidents alleged by Smith into three groups.[6] In doing so, the court looked at each allegation of harassment in isolation instead of looking at “the accumulation of abusive conduct” to make its summary judgment determination. See Hathaway v. Runyon, 132 F.3d 1214, 1222 (8th Cir.1997). It is necessary that courts look at “all the circumstances,” including those which are not explicitly racial in nature, when analyzing allegations of workplace harassment. Breeden, 532 U.S. at 270, 121 S.Ct. 1508. See also Hathaway, 132 F.3d at 1222 (“Not every aspect of a work environment characterized by hostility and intimidation need be explicitly sexual in nature to be probative.”).[7] In this case, the majority focuses *1090 its analysis only on the most flagrant instances of racial animus to the exclusion of numerous other incidents. In prior cases, however, when there was evidence of overt harassment, we looked at all allegations, not just the incidents demonstrating overt racial animus, to determine whether the incidents were frequent or severe enough to affect a term, condition, or privilege of employment. See Diaz v. Swift-Eckrich, Inc., 318 F.3d 796, 799 (8th Cir.2003) (finding a triable issue of fact on whether harassment altered a term of employment where evidence was presented of overtly racial remarks along with actions such as making “rude noises, laughter, and statements that [plaintiff] was ‘stupid’ ”); Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 759 (8th Cir.2003) (“The humiliating and intimidating effect of the snickers and noises on [plaintiff] could have been interpreted by the jury to be caused by the nexus between that behavior and [the harasser’s] earlier sexual overtures.”); Bowen v. Mo. Dep’t of Soc. Servs., 311 F.3d 878, 884 (8th Cir.2002) (finding a few explicitly racial actions coupled with frequent hostile stares sufficient to create a triable issue of fact on whether the conduct altered a term of employment); Hathaway, 132 F.3d at 1222 (finding that other acts in the workplace can be used as a nexus with overt acts of harassment to establish a prima facie case).[8] Since it is essential to a hostile work environment claim to show that conduct is either “severe or pervasive,” the district court failed to acknowledge other allegations can form the nexus to establish a prima facie case. See Hathaway, 132 F.3d at 1222. As such, I believe the district court improperly reviewed the allegations as isolated events instead of considering “the accumulation of the abusive conduct.” Id.
In viewing the totality of the circumstances, I would conclude Smith created a trial-worthy issue on whether the harassment Smith alleges altered a term, condition, or privilege of employment. My review of the record leads me to conclude Smith produced sufficient evidence to create a fact issue as to whether “the cumulative effect” of the workplace harassment was “severe or pervasive” to support her claim. See Bowen, 311 F.3d at 885.
The facts in this case are similar to those in Bowen, where an employee suffered overt racial harassment on a few occasions. Id. The incidents included: (1) a co-worker calling plaintiff a “white bitch” and a “menopausal white bitch;” and (2) other employees telling the plaintiff that the co-worker did not like white people. Id. We also reviewed other allegations which were not overtly racial. Id. Such incidents included: (1) the co-worker throwing a cake which the plaintiff made on the floor; (2) hostile stares by the coworker toward the plaintiff; (3) the coworker making threats of physical beating; and (4) the co-worker running at the plaintiff. Id. All of these incidents occurred within the plaintiffs two years of employment. Id. We found that although the “conduct towards [plaintiff] was not frequent, neither was it infrequent” and there was enough evidence for a jury to consider whether the accumulation of the conduct was severe enough to alter a term of the plaintiffs employment. Id.
*1091 Comparing Smith’s case to Bowen, some of the harassment endured by Smith was overtly racial. For example, (1) the picture of Buckwheat posted with other employees’ childhood photographs with a caption saying “Guess who this is?”; (2) employees stating Smith “needs to go back to the ghetto;” (3) overtly racist t-shirts displayed for Smith by other employees on getoffended.com; (4) a nurse stating “these black aides don’t know what they are doing;” and (5) a nurse stating “tj]ust like a dog, you beat them and abuse them, they still come back. Just like any good runaway slave.” Like Bowen, Smith also alleged incidents which were not explicitly racial. Incidents included: (1) a co-worker stating Smith’s conversation with a Somali volunteer about ethnic food was “inappropriate;” (2) co-workers showing Smith the image of three people who appeared to be African-American on The Onion with the caption “Show us your tits for emergency rations;” (3) Smith bringing ethnic food to work and a co-worker stating that “crap in [the co-workers] garbage” smelled better; (4) a co-worker commenting that “[p]eople can’t see [Smith’s acne] because [she’s] black;” and (5) a co-worker’s comment on Smith’s ability to speak Spanish. The determination of whether the sum of the incidents alleged by Smith create a hostile work environment should be left to the fact-finder because “[o]nce there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury.” Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir.1998). Viewing the allegations together, I would conclude the evidence presented by Smith creates a “reasonable inference” that the cumulation of racial animus altered a term of Smith’s employment.
In attempting to distance this case from the holding in Bowen and other similar cases, see Diaz, 318 F.3d 796; Hathaway, 132 F.3d 1214, the majority attempts to read into the hostile work environment claim a requirement that all incidents of mistreatment possess “congruency of person or incident.” Ante at 1085. Whatever the precise meaning of this requirement, imposing this additional burden on plaintiffs in hostile work environment cases is not supported by law. Although it is true that plaintiffs must establish a causal nexus between the harassment and their membership in the protected group and, separately, appreciable effect of harassment incidents on a term, condition, or privilege of their employment, no cases require them to establish that all harassment emanated from the same individual or occurred immediately following the most palpable instances of harassment.
Even to the extent the majority interprets the law to require “congruency of person or incident” to explain why some seemingly innocuous conduct has racial undertones to a particular plaintiff, application of this requirement to dismiss this case violates this court’s obligation to view all the evidence in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and use summary judgment in employment discrimination cases sparingly, Wallace, 442 F.3d at 1117. Smith experienced several instances of harassment with varying degree of racial animus. But even with regard to the least culpable of these instances, which were classified by the district court as “tenuously related” to race, a rational trier of fact could conclude they were related to Smith’s membership in the protected group. The point is that the court cannot completely disregard these instances merely because they are not the strongest card in the plaintiffs hand. For fear of consider weaker incidents “in isolation,” the majority completely disregards them. *1092 Rather than draw its own conclusions on how offensive or racially insensitive these instances are to a reasonable person, the majority must leave this task to the jury.
The majority also cites Anderson for the proposition the harassment alleged by Smith was not severe because it is void of “physically threatening or intimidating behavior.” 606 F.3d at 520. However, particularly egregious examples of harassment should not mark the boundary of actionable harm. See Harris, 510 U.S. at 22, 114 S.Ct. 367 (holding the most egregious examples do not determine when an environment is sufficiently hostile or abusive). Additionally, the severity of a work environment should not simply be measured by a single event which is extreme in nature, but also by the cumulation of abusive conduct toward an employee. See Hathaway, 132 F.3d at 1222. There is clear evidence that Smith was harassed on several occasions because of her race. Since this is certainly offensive conduct, the assessment of whether the harassment created a hostile work environment should be left in the hands of the jury. See Howard, 149 F.3d at 840.
In sum, I believe the evidence provided by Smith is sufficient to create a jury question on whether the harassment at her workplace altered a term of her employment. Therefore, I would reverse the district court’s grant of summary judgment to Fairview on Smith’s hostile work environment claim, and remand this case for trial.

. The categories were (1) incidents tenuously related to race and not evincing racial animus; (2) incidents giving rise to an inference that they were racially motivated; and (3) incidents demonstrating overt racial animus.

. The majority cites Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) for the proposition that the stringent hostile work environment standard is designed to "filter out complaints attacking the ordinary tribulations of the workplace.” However, this language refers to the claim as a whole instead of specific incidents reviewed piecemeal. The Supreme Court clearly articulated the sufficiency of a claim is judged "by looking at all the circumstances” and not only reviewing the allegations found to be explicit harassment. Id.

. The majority states that only instances which “have a racial character or purpose” can be used to support a hostile work environment claim. Singletary v. Mo. Dep’t of Corrs., 423 F.3d 886, 893 (8th Cir.2005). However, as recognized in Diaz, Eich, Bowen, Hathaway, and other cases, whether a particular incident is racial in character is a question properly submitted to the jury, so long as the evidence as a whole permits such an inference.